STANDARD AMUSEMENT AND MANUFACTURING COMPANY, PLAINTIFF IN ERROR, v. IRA S. CHAMPION, DEFENDANT IN ERROR.

Submitted July 13, 1908—Decided March 1, 1909.

1. An agreement, after reciting that certain premises had been thereby let and rented by one of the parties thereto to the other party as a place of amusement as thereinafter set forth, provided that the second party, the plaintiff, should install therein personal property, and pay to the first party, the defendant, "for rent 50 per cent. of the net receipts derived therefrom," and that the plaintiff thereby granted to the defendant the privilege of a lunch counter and soda fountain in the front part of the building upon payment to the plaintiff of twenty per cent. of the gross receipts derived from the sale of tickets at the entrance to the lunch counter from the rink. *Held*, that such agreement created the relation of landlord and tenant between the parties as to such premises.

2. Where, under the above agreement which provided for weekly settlements between the parties, the plaintiff had been permitted to receive all the moneys and keep all the accounts, and had kept books of account in which he had entered all the receipts and all the disbursements of the business and had from such books made the weekly settlements, which were also entered therein—*Held*, in an action of tort, for willfully refusing to permit the plaintiff to occupy the premises under the agreement and for tearing down and breaking up the said personal property and throwing the

same out of the building before the term had expired, thereby destroying the business, that it was error to refuse to admit in evidence the said books of account to show the rental of the premises, and the extent of the business.

3. The declaration having averred loss on account of the destruction of the business by the defendant's wrongful act, it was proper to admit evidence as to the extent and general profits of such business.

On error to the Supreme Court.

For the plaintiff in error, *Albert R. McAllister* and *Walter H. Bacon.*

For the defendant in error, *Albert A. Howell* and *Bourgeois & Sooy.*

The opinion of the court was delivered by

VOORHEES, J.   This suit sounds in tort.   It was brought by the Standard Amusement and Manufacturing Company against the defendant, the owner of certain premises at Ocean City, to recover damages for the defendant's refusal to permit the plaintiff to occupy the premises and to make use thereof, or of its property placed therein by it under an agreement to be referred to, from the 25th of April, 1907, when it is alleged the defendant broke up, tore down, damaged and destroyed four bowling alleys, twenty-nine automatic machines and threw the same out of the building, rendering the same worthless to the plaintiff and deprived the plaintiff of their use, whereby the plaintiff was prevented "from making the profits which it would otherwise have made by the use and occupancy of the premises and the use of said property." This is the substance of the first count of the declaration.

The second count is trespass *de bonis asportatis* for twenty-nine automatic machines, four bowling alleys and appliances, vaudeville stage and scenery, two hundred pairs of roller skates, and the third count is for trover and conversion of the same articles of personal property.

The declaration refers to, and has annexed to it, a written agreement between the parties by which the defendant "let

and rented the premises to the plaintiff to be used as a place of amusement as hereinafter set out." By it the plaintiff agreed to install in the building four bowling alleys, thirty automatic machines, roller skates, cigar cases and cigars for sale, and to pay the defendant for rent fifty per cent. of the net receipts derived therefrom. The defendant had the privilege of a lunch counter and soda fountain in the front of the building and was to pay to the plaintiff "twenty per cent. of the gross receipts derived from the sale of tickets at the entrance to the lunch counter from the rink." This agreement was to be binding and in force on both parties for the space of two years, that is to say, to March 24th, 1908. Settlements were to be made on Monday morning of each week for all receipts received during the preceding week.

The business was started and continued till some time in September, 1906, when the plaintiff says because of the advanced season the profits fell off and the defendant thought the alleys were not paying, and suggested that "we cut the help off, which we did, and the next week skating dropped off." The defendant then suggested that the skating wasn't paying and he would let his milkman run it one night each week, and that the plaintiff leave fifty pairs of skates there for the winter and thereafter the matter was by mutual consent closed down. The plaintiff, about October, 1906, went to the premises, looked over the personal property, put it away and locked up the building.

This is at least inferentially denied by the defendant, who says that the venture was closed up and abandoned by the plaintiff without defendant's knowledge or consent, and he thereafter considered the agreement at an end and sought to rescind it. However, the articles of personal property remained in the building until the latter part of March, 1907. About the 1st of April, 1907, they were removed by the defendant from the building and placed in a storage warehouse, and the bowling alleys were taken apart, removed and placed under the building, where, about four days after such removal, the plaintiff saw them, but did not attempt to care for them or protect them. The rest of the personal property was

either shipped back to the plaintiff at Bridgeton or placed by the direction of the defendant in warehouses, to which subsequently the plaintiff went and procured such skates as it wished, to be shipped to Bridgeton, paying $10 on account of storage and leaving the remainder of the property in the warehouse. This property was subsequently levied on by the sheriff by virtue of an execution issued upon a judgment against the plaintiff. The property, at the time of the commencement of this suit, was in the possession of the sheriff by virtue of the levy. The defendant locked up the building and prevented the plaintiff from entering it.

The court left the question of abandonment and rescission of the contract to the jury, but directed that in case they found no rescission they might render a verdict in favor of the plaintiff for six cents, and such verdict was accordingly rendered.

The proof failed as to the second and third counts of the declaration, thus leaving the tortious act of the defendant in keeping the possession from the plaintiff and in removing the personal property from the building and thereby breaking up the business agreed to be carried on under the contract the sole questions for consideration.

Several errors have been assigned. Of those that are pressed, the first group relates to the overruling of the question put to plaintiff's witness, "How much did you pay Mr. Champion?" referring to what the defendant's share of the net receipts amounted to; to the exclusion of plaintiff's books of account; to the overruling of the plaintiff's offer to show the amount of money paid by the plaintiff to the defendant as rent during plaintiff's occupancy, and the amount of the receipts from the business while it was being conducted.

The books referred to were kept by the plaintiff, in which entries of the receipts and disbursements of the business were regularly entered, as well as the amounts paid to the plaintiff as rent in the weekly settlements between the parties. The defendant accepted these weekly payments with their accompanying statements.

The finding of the jury for the plaintiff established the fact that the contract was still in force.

The agreement by its very terms created a tenancy and the relation of landlord and tenant between the parties, and also provided for a joint business venture.

It should be noticed that this action is in tort, and not upon an implied covenant for quiet enjoyment. Indeed, in this case such covenant could not arise impliedly under the terms of the agreement. *Mershon* v. *Williams,* 34 *Vroom* 398. In the case cited such an implied covenant was specially declared upon, and the distinction between that action and one in tort for a trespass in eviction was pointed out. But it cannot be doubted that the action of the landlord in withholding the possession and in taking apart and removing the property placed by the plaintiff upon the premises under the agreement, thus putting an end to the business, is an actionable wrong, for which compensatory damages may be recovered. It is, moreover, practically conceded that one element of such damage is the value of the premises for rent during the remainder of the term, that is, the actual rental value of the unexpired term, less the amount of rent reserved in the lease. In this case there was no definite amount of rent; the compensation by way of rent was one-half the net receipts. The ascertainment of the value of the term and the future rental to be paid were necessarily dependent upon knowledge of such receipts. Such receipts of the business were from the very nature of the case arising out of the terms of the agreement an essential part of the plaintiff's proof, and these from week to week were equal to the weekly payments for rent made to the defendant. The witness, therefore, should have been permitted to testify how much was thus paid to the defendant. The business was conducted by the plaintiff, who received all moneys, including those derived from the sale of tickets to the entrance to the lunch counter from the rink, twenty per cent. of which was to be retained by the plaintiff, paid expenses, and was required to account for the net receipts. Impliedly he did this for joint purposes of the plaintiff and defendant. These transactions properly were kept in books, and from

them were the net receipts to be computed. The books were not strictly traders' books, but partook more of the nature of partnership accounts, and as such were admissible in evidence for and against the parties. *Schlicher* v. *Whyte,* 71 *Atl. Rep.* 337.

They were, therefore, admissible for the purpose of ascertaining the receipts and disbursements in order that the value of the lease and rentals might be determined. But if they were not, then the plaintiff should have been permitted to testify from memory if he could, as to what the net receipts were before eviction. See cases collected in *Joyce Dam.,* § 1846 *et seq.*

The judge, however, charged the jury, and this was specially excepted to, that no competent testimony had been given of any definite damages from which the jury could render a verdict in favor of the plaintiff, and that the most they could do, under the circumstances, was to award a verdict for six cents, nominal damages. The overruling of the testimony above referred to eliminated from the case an essential element of proof of substantial damages. If the testimony had been admitted this dearth of evidence would not have existed. Nor did this testimony border upon the speculative. It was fundamental in the proof of damages, sustained by the plaintiff under the peculiar and particular business arrangement existing between the parties to this suit.

Not only had the plaintiff been dispossessed, but his business, which was to an extent a joint venture with the defendant, had been destroyed by the casting out of the plaintiff's property, put there under agreement with the defendant for the purpose of conducting that business.

The declaration avers loss on this account, and such loss was a necessary and proximate resultant. The testimony as to the extent and general profits of the business was competent in this aspect of the case. In *New Jersey Express Co.* v. *Nichols,* 4 *Vroom* 434, this court said: "In actions of tort, where the quantum of damages is very much within the discretion of the jury, evidence of the nature and extent of

the plaintiff's business and the general rate of profit he has realized therefrom, which has been interrupted by the defendant's wrongful act, is properly received, not on the ground of its furnishing a measure of damages to be adopted by the jury, but to be taken into consideration by the jury to guide them in the exercise of that discretion which, to a certain extent, is always vested in the jury." See, also, *Luse* v. *Jones,* 10 *Id.* 707.

Moreover, it cannot be said, as matter of law, that merely nominal damages can be recovered for the wrongful removal of the personal property of the plaintiff from the building and the placing of some of it, at least, where it was exposed to the elements. Injuries resulting from such acts furnish a basis for a jury to award substantial damages. As bearing upon this aspect of the case, it was likewise error to confine the jury to a nominal finding.

The offers of compromise, upon the rejection of which some of the assignments of error are founded, were, of course, inadmissible in evidence.

The other errors assigned seem to have been abandoned.

The judgment will be reversed and a *venire de novo* awarded.

*For affirmance*—None.

*For reversal*—THE CHANCELLOR, CHIEF JUSTICE, GARRISON, SWAYZE, REED, TRENCHARD, PARKER, BERGEN, VOORHEES, MINTURN, BOGERT, VREDENBURGH, VROOM, GRAY, DILL, J.J. 15.